**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**

**v.**

**TYDEL B. JOHN, Appellee/Defendant**

S. Ct. Crim. No. 2008-091

Supreme Court of the Virgin Islands

July 1, 2009

249

DOLACE MCLEAN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellant.*

MARTIAL A. WEBSTER, ESQ., Law Offices of Martial A. Webster, Sr., St. Croix, USVI, *Attorney for Appellee.*

Before: HODGE, *Chief Justice;* CABRET, *Associate Justice; and* SWAN, *Associate Justice.*

## OPINION OF THE COURT

(July 1, 2009)

PER CURIAM. The appellee, Tydel John ("John"), was a sixth grade teacher at a Virgin Islands elementary school. After several of John's female students alerted school officials that John had inappropriately touched them, the officials notified police about the reports. Virgin Islands Police Officer Naomi Joseph ("Officer Joseph") investigated the allegations. As a result of the investigation, the People of the Virgin Islands charged John with eight counts of first degree unlawful sexual contact,[1] three counts of first degree aggravated rape,[2] seven counts of child abuse,[3] and two counts of child neglect.[4] In addition, Officer Joseph applied for a warrant to search John's home for evidence purportedly related to the alleged offenses. The search yielded, among other items, ten

---

[1] *See* V.I. CODE ANN. tit. 14, § 1708.

[2] *See* 14 V.I.C. §1700.

[3] *See* 14 V.I.C. §505.

[4] *See* 14 V.I.C. §504.

notebooks in which John allegedly chronicled his exploitation of young girls. John moved to suppress evidence of the ten notebooks seized during the search, arguing that the warrant was not supported by probable cause. The trial court granted John's motion, and the People filed this appeal. For the reasons which follow, we will affirm the trial court's order suppressing the notebooks seized under the warrant.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The search warrant that yielded the contested evidence was supported by an affidavit produced by Officer Joseph. In her affidavit, Officer Joseph recounted her interviews with the students who had allegedly been molested by John. These interviews revealed that all the alleged acts had taken place in John's classroom at the elementary school. According to the affidavit, one of the students who claimed that John had "tried unsuccessfully to touch her," also stated in the interview with Officer Joseph "that Mr. John has a blue spiral book in which he has written inappropriate things about the female students of his current class and previous classes." (Joseph Aff. ¶ 3.n., Dec. 3, 2007.) Officer Joseph similarly stated in her affidavit that "further investigation revealed that Tydel John has two note books that he has been making notations in regarding his students. That every day he packs up said books and travels with them in his bag." (Joseph Aff. ¶ 3.s.) Finally, Officer Joseph averred "[t]hat persons who commit sexual offense crimes involving children customarily hide evidence of such offences, including notes, photographs, computer files, in their homes and on their computer." (Joseph Aff. ¶ 3.u.) Relying on these averments, Officer Joseph claimed "that the following evidence can be found at the residence of Tydel B. John: 1. Blue spiral note book[,] 2. Red spiral note book[,] 3. Pornographic magazines[,] 4. Pornographic photographs of children[,] and 5. Computer files containing pornographic notes or photographs of children." (Joseph Aff. ¶ 3.v.)

Based on the information contained in Officer Joseph's affidavit, on December 3, 2007, a Superior Court judge found probable cause to issue a warrant for a search of John's home to locate the evidence specified in the affidavit.[5] Officer Joseph, who was among the officers executing the

---

[5] It appears that on the same day the search warrant was issued, December 3, 2007, a Superior Court judge issued an arrest warrant, and John was arrested pursuant to that warrant.

warrant, testified that during the search the officers seized: "two computers, two laptops, a desk top, and several journals, a black bag with some spiral books and some written books." (Hr'g Tr. 95, Oct. 2, 2008.) In describing the search, Officer Joseph stated that she found the black bag containing the spiral notebooks "[r]elatively early in the search." (Hr'g Tr. 135.) Officer Joseph further indicated that when she found the black bag containing the spiral notebooks, she assumed that she had found the blue and red notebooks specified in the warrant and was accordingly focusing her search on "[l]ooking for any pornographic photos of children."[6] (Hr'g Tr. 135.) While continuing the search for pornographic photos of children, the officers found ten composition type notebooks "hidden away" in a closet and on a bookshelf in John's bedroom. (Hr'g Tr. 97). According to Joseph, "you could not see [the notebooks] unless you move[d] the books we were searching, and *in our search for pictures*, we were able to butt up on these books hidden away." (Hr'g Tr. 97) (emphasis added). The books were not similar to the red and blue spiral bound notebooks described in the affidavit, which Joseph believed she had already found in any event. In fact, none of the composition style notebooks were spiral bound and nine of them were black and white, while the other was black and white and colored with what appeared to be a red marker. The books were dated and labeled as "Tydel John Journals." (Hr'g Tr. 97-98.) Although the officers were ostensibly looking for pornographic photographs of children at this point, Joseph testified: "I opened up the first book . . . and saw the first page where the man said he had pedophilia feelings, tendencies, I was sure we need[ed] to secure these books." (Hr'g Tr. 108.) Thus, the officers took all ten notebooks, along with the other items they seized from John's house, and left.

Six weeks later, on January 14, 2008, Joseph applied for another search warrant, this time to examine the contents of the ten composition style notebooks earlier seized from John's home. A Superior Court judge

---

[6] At the suppression hearing, the Court ordered the People to produce the black bag and its contents. Officer Joseph described the contents of the bag as follows: "several spiral binded books. One is in fact maroon or red, two blues, papers from his school, grades and whatnot for the kids, artist book." (Hr'g Tr. 132.) While it appears that at least one of these books contained John's notations about students, these notations do not appear to be related to John's alleged sexual contact with students.

granted the application and issued a warrant.[7] Aside from Officer Joseph's testimony concerning what she read when she first found the notebooks in John's home, the record before this Court does not reveal the precise contents of the books. However, the People moved the trial court to introduce statements made by John in the notebooks as admissions and as evidence of prior bad acts. John responded by moving to suppress the notebooks on the ground that they were obtained during a search conducted without probable cause.

After a hearing, the trial court granted John's motion and excluded evidence of the ten composition style notebooks at trial. The trial court reasoned that even if there was probable cause to search for the blue and red spiral bound books as evidence that John committed child molestation, Officer Joseph presented no basis in her affidavit to establish probable cause that John engaged in any crime related to child pornography. And, because Officer Joseph admittedly found John's ten journals after having already located the blue and red spiral notebooks and while searching only for pornographic photographs of children, it could not be said that the journals were found as part of the search for evidence of child molestation. Finally, because Officer Joseph's affidavit did not reveal any grounds for establishing that individuals who engage in child molestation are likely to also possess child pornography, the trial court ruled that the officers "could not have reasonably believed that there was sufficient probable cause to obtain a warrant to search for child pornography." (Order on Mot. to Suppress 7.) Therefore, the trial court concluded, the good faith exception to the exclusionary rule did not apply. This appeal ensued.

The People enumerate four issues on appeal which can be distilled into the following arguments. First, the People argue that the search warrant was supported by probable cause that evidence of child pornography would be found in John's home because there is a well established nexus between child molestation and the possession of child pornography. Second, the People contend that even if there was no probable cause to

---

[7] While Joseph's affidavit supporting her warrant application clearly stated that the composition books had already been found at John's residence, and the warrant stated that Officer Joseph established probable cause "to read, and/or copy material from [the books] found during a search at defendant, Tydel John's home," the warrant inexplicably authorized a search of John's home for the books. (Search Warrant, Jan. 14, 2008.)

search for child pornography, the trial court should have merely severed the invalid portions of the warrant and suppressed only the evidence obtained under those portions rather than excluding all the evidence obtained under the warrant. Third, the People assert that even if the warrant lacked probable cause, the good faith exception to the rule requiring exclusion of the evidence applied because the officers conducting the search acted in objectively reasonable reliance on the warrant.

In response to these arguments, John essentially relies on the reasoning employed by the trial court in granting his motion to suppress. That is, John argues that the officers did not have probable cause to search for child pornography and contends that the ten journals were found during the search for child pornography. John also contends that because no connection was established linking his alleged child molestation with child pornography, an objective officer could not have reasonably relied on the warrant to continue the search for child pornography after the spiral notebooks were located.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, *or as otherwise provided by law.*" (Emphasis added). Although the trial court's order in this case is not a final order, when an appeal is taken by the government in a criminal action challenging a Superior Court order suppressing evidence, title 4, section 33(d)(2) extends jurisdiction to this Court to review the appeal as follows:

An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the Attorney General conducting the prosecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding. The trial court shall adjourn or continue the

trial until the appeal is resolved. The appeal shall be determined promptly.

Inasmuch as the People filed this appeal before John was put in jeopardy,[8] and the Assistant Attorney General prosecuting the appeal made the certifications required by section 33(d)(2), the appeal is properly before this Court for consideration.

In reviewing the trial court's decision on John's motion to suppress,

> we review its factual findings for clear error and exercise plenary review over its legal determinations. Where, as here, a [trial] court, in reviewing a [judge's] determination of probable cause, bases its probable cause ruling on facts contained in an affidavit, we exercise plenary review over the [trial] court's decision.

*United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006) (citations and quotation marks omitted).

## III. DISCUSSION

### A. The Search for Child Pornography Was Not Supported by Probable Cause.

 The requirement that search warrants be based on probable cause emanates from the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment is made applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954.[9] In determining whether probable cause exists to issue a warrant, a judge must

---

[8] Jeopardy attaches when a jury has been sworn. *See United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008).

[9] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995) (preceding V.I. CODE ANN. tit. 1).

make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [issuing judge] had a 'substantial basis for . . . concluding' that probable cause existed.

*Shields*, 458 F.3d at 277 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)) (ellipses in original, internal quotation marks and citation omitted). One factor that is particularly important in our review of the warrant in this case is that "[t]he Fourth Amendment . . . 'generally bars officials from undertaking a search or seizure absent individualized suspicion.' " *Id.* (quoting *Chandler v. Miller*, 520 U.S. 305, 308, 117 S. Ct. 1295, 1298, 137 L. Ed. 2d 513 (1997)). In this regard, "[i]t is well established that a search " 'must be supported by probable cause particularized with respect to that person.' " *Id.* (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 342, 62 L. Ed. 2d 238 (1979)); *accord United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990) (recognizing that to satisfy the Warrant Clause of the Fourth Amendment, a warrant "must be no broader than the probable cause on which it is based." (citation omitted)). Furthermore, the circumstances establishing probable cause must appear in the affidavit supporting the warrant. *See United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (" 'All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath.' " (quoting *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006))).

■ The affidavit in this case did not present a substantial basis for establishing probable cause that evidence of child pornography would be found in a search of John's home. While it is true, as argued by the People, that some courts have generally recognized evidence showing a connection between child molestation and child pornography, *see, e.g.*, *Osborne v. Ohio*, 495 U.S. 103, 111, 110 S. Ct. 1691, 1697, 109 L. Ed. 2d 98 (1990) (In ruling on constitutionality of state statute proscribing possession of child pornography the Court recognized that the law was desirable "because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." (citing 1 Attorney General's Commission on Pornography, Final Report 649 (1986))), in this case there was *no evidence* in Officer Joseph's affidavit to support the finding of such a nexus.

256

The Court of Appeals for the Sixth Circuit recently addressed similar facts to the instant case in *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), relied on by the trial court in this case. In *Hodson*, the issue before the court was "whether a suspect's ostensibly admitting to having engaged in child molestation is sufficient, without more, to establish probable cause to search that suspect's home for child pornography." *Id.* at 286. In concluding that such facts were not sufficient to establish probable cause, the court observed that the supporting affidavit was silent with respect to any connection between the defendant and child pornography:

> Detective Pickrell's exposition of probable cause in the affidavit does not establish, allege, or even suggest any basis for a finding of probable cause to believe that Hodson had ever been involved in child pornography in any manner. Moreover, Detective Pickrell offered no assertion-in either the affidavit or any other evidence (e.g., expert testimony) then before the magistrate judge-of any relational nexus between child molestation and child pornography. Thus, it was and is clear that, in this affidavit, Detective Pickrell established probable cause to search for evidence of one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography).

*Id.* at 289. Under these circumstances, the court ruled: "the warrant did not authorize the search and, barring some other consideration, the evidence obtained during that search must be excluded from trial." *Id.* at 292.

The court's ruling in *Hodson* is in harmony with the admonition of the United States Supreme Court and the Court of Appeals for the Third Circuit that a search " 'must be supported by probable cause particularized with respect to that person.' " *Shields*, 458 F.3d at 277 (quoting *Ybarra*, 444 U.S. at 91, 100 S. Ct. at 342). The court's decision in *Hodson* is likewise consistent with the court's ruling in *United States v. Falso*, 544 F.3d at 122. In *Falso*, the court examined whether the defendant's "eighteen-year old conviction involving the sexual abuse of a minor (or some other factor) provide[d] a sufficient basis to believe that evidence of child pornography crimes would be found in [his] home." *Id.* at 113. In reversing the trial court's determination that probable cause existed, the appellate court reasoned:

It is an inferential fallacy of ancient standing to conclude that, because members of group A (those who collect child pornography) are likely to be members of group B (those attracted to children), then group B is entirely, or even largely composed of, members of group A. Although offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation drawn by the district court. Perhaps it is true that all or most people who are attracted to minors collect child pornography. But that association is nowhere stated or supported in the affidavit.... While the district court undoubtedly had the safety of the public in mind, an individual's Fourth Amendment right cannot be vitiated based on fallacious inferences drawn from facts not supported by the affidavit.

*Id.* at 122 (citations, quotation marks and footnotes omitted). Thus, the court concluded: "That the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough. They are separate offenses and, as explained above, nothing in the affidavit draws a correlation between a person's propensities to commit both types of crimes."[10] *Id.* at 123; *accord Weber*, 923 F.2d at 1345 (where the affidavit supporting a warrant contained expert boilerplate assertions about the propensities of people who collect child pornography, but did not establish that the defendant exhibited these propensities, the court ruled: "if the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class."); *United States v. Myers*, 591 F. Supp. 2d 1312, 1334 (2008) ("The Court is unwilling to conjecture, based simply on the fact that both child pornography and sexual offenses are particularly heinous crimes, that a connection necessarily arises between them." (citing *Hodson*, 543 F.3d at 292)).

 Considering Officer Joseph's affidavit in light of these principles, we easily conclude that the warrant lacked probable cause that evidence of child pornography would be found in John's home. The affidavit did

---

[10] We note that while numerous states have statutes criminalizing the possession of child pornography, *see Osborne*, 495 U.S. at 111 n.6, 110 S. Ct. at 1697 (citing statutes from nineteen states), there is currently no such proscription in the Virgin Islands Code. However, the Twenty-Eighth Legislature of the Virgin Islands has legislation pending that addresses the issue. *See* S. 28-008, 28th Leg. (V.I. 2009).

not present even a single circumstance which implicated John in the possession of child pornography. Even if, for the sake of discussion, we were to generally accept the People's assertion that child molesters have a propensity for collecting child pornography, Officer Joseph's affidavit was silent on this matter and likewise failed to present any facts from which it could be deduced that John fit within the particular class of people who exhibit such a propensity. Thus, we reject the People's argument that the warrant's authorization to search for child pornography was supported by probable cause.

## B. Redacting the Invalid Portions of the Warrant Will Not Save the Books from Exclusion.

The People next argue that rather than striking the entire warrant for a lack of probable cause, the trial court should have merely redacted the invalid portions of the warrant. Under this course of action, the People seem to suggest, the ten notebooks should not have been suppressed.[11] We disagree.

Initially, we note that it is unclear whether the People raised this argument below. In violation of Supreme Court Rule 22(a)(3), the People have not designated the pages in the appendix that show where they raised the issue before the trial court. In addition, it is also not clear from the trial court's order that the court ruled that the entire warrant lacked probable cause. In any event, while redaction is the proper remedy to excise invalid portions of a warrant, we cannot discern how such an exercise would yield a different result in this case.

 The proposition that invalid portions of a warrant should be redacted has been explained by the Court of Appeals for the Third Circuit as follows:

> [W]here the evidence authorized to be seized exceeds the underlying probable cause justification, the proper course is for the court to redact that information from the affidavit of probable cause . . . . "By redaction, we mean striking from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and

---

[11] It is important to note that the People are only challenging the trial court's exclusion of the ten "notebooks where [John allegedly] documented his exploits with young girls." (Appellant's Br. 12).

preserving those severable phrases and clauses that satisfy the Fourth Amendment. Each part of the search authorized by the warrant is examined separately to determine whether it is impermissibly general or unsupported by probable cause. Materials seized under the authority of those parts of the warrant struck for invalidity must be suppressed, but the court need not suppress materials seized pursuant to the valid portions of the warrant."

*United States v. Yusuf*, 461 F.3d 374, 389, 48 V.I. 980 (3d Cir. 2006) (quoting *United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982)).

■ In this case, we have already determined that the portions of the warrant authorizing a search for child pornography were not supported by probable cause. The trial court found, and the record supports the finding, that the officers discovered the ten contested notebooks *after* they found the spiral notebooks identified in the warrant and *during their search for pornographic photos of children.* Because the officers found the ten notebooks during an invalid search for child pornography, a redaction of the portions of the warrant authorizing a search for child pornography does not spare the books from suppression.

■ Furthermore, the warrant cannot be read to have authorized an unlimited search for notebooks in which John may have chronicled his exploits. Officer Joseph's affidavit reveals that she learned of only two, specifically described notebooks in which John allegedly wrote about his unlawful contact with students: a blue spiral notebook and a red spiral notebook. The fact that probable cause may have existed to believe that these two books would be found in John's home does not establish probable cause to believe that there would be additional notebooks, and the warrant did not authorize such an extended or general search. *See Weber*, 923 F.2d at 1344 ("[P]robable cause to believe that *some* incriminating evidence will be present at a particular place does not necessarily mean there is probable cause to believe that there will be more of the same.") (citing 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: *A Treatise on the Fourth Amendment*, §3.7(d)). Under these circumstances, we conclude that even if the invalid portions are stricken from the Officer Joseph's affidavit, the ten notebooks were still properly excluded from evidence.

## C. The Facts of this Case Do Not Support Application of the Good Faith Exception to the Exclusionary Rule.

██ ██ Finally, the People assert that even if the warrant lacked probable cause to search for child pornography, the officers discovered the ten notebooks during a search for child pornography conducted in objectively reasonable reliance on the warrant. Such reliance, the People claim, excepts the evidence from exclusion under the good faith exception to the exclusionary rule established by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Under this exception, "when police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *Herring v. United States*, ___ U.S. ___, 129 S. Ct. 695, 701, 172 L. Ed. 2d 496 (2009) (quoting *Leon*, 468 U.S. at 922, 104 S. Ct. at 3420). While the fact that a judge issued a search warrant will normally suffice to establish that the officer executing the warrant acted in good faith in conducting the search, there are exceptions where reliance on a judge issued warrant will not trigger the good faith exception. *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002). Among such situations is "[w]here the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 437 (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).

> Under this exception, the executing officer must have had no reasonable grounds for believing that the warrant was properly issued. Moreover, the objective reasonableness determination does not examine the subjective states of mind of [the particular] law enforcement officers [conducting this particular search], rather it inquires whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.

*Hodson*, 543 F.3d at 293 (citations and quotation marks omitted).

██ In considering whether to apply the good faith exception, we must also take into account the purpose of the exclusionary rule. As recently pointed out by the Supreme Court in *Herring*, the exclusionary rule "is not an individual right and applies only where it result[s] in appreciable deterrence." *Herring*, ___ U.S. ___, 129 S. Ct. at 700. Thus, our inquiry

must also focus "on the efficacy of the rule in deterring Fourth Amendment violations in the future." *Id.* And, because excluding evidence results in the "substantial social cost[ ] . . . of letting guilty and possibly dangerous defendants go free," the benefits of deterrence must outweigh the costs of suppression. *Id.* (citations omitted).

 Upon applying these principles to this case, we are convinced that the good faith exception does not apply and that the circumstances warranted suppression of the evidence. As was the case in *Hodson*, in this case a reasonably well-trained officer would have realized "that the search described [in the warrant] (for evidence of the crime of child pornography) did not match the probable cause described [in the affidavit] (that evidence would be found of a different crime, namely, child molestation) and therefore the search was illegal, despite the [issuing judge's] decision to the contrary." *Hodson*, 543 F.3d at 293. "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh v. Ramirez*, 540 U.S. 551, 563, 124 S. Ct. 1284, 1293, 157 L. Ed. 2d 1068 (2004). Even a cursory reading of Officer Joseph's affidavit reveals that there is not a single assertion that John was in any way associated with child pornography. Given this obvious deficiency, it is clear that the officers executing the warrant blindly relied on the fact that the warrant was issued by a judge and disregarded the fact that their search was not supported by probable cause. Even if Officer Joseph had some specialized, subjective knowledge that there was a nexus between John's alleged acts of child molestation and the possession of child pornography, she did not divulge that knowledge in her affidavit, and "such subjective knowledge is not sufficient to satisfy a finding of objective good faith." *Hodson*, 543 F.3d at 293 (citation omitted). It is also worth mentioning that, as observed by the Third Circuit in *Zimmerman*, where the affiant is one of the executing officers, as was Officer Joseph in this case,

> it is somewhat disingenuous, after having gone to the [Superior Court judge] with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the [judge] who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable.

277 F.3d at 438; *accord Groh*, 540 U.S. at 564, 124 S. Ct. at 1293 ("because petitioner himself prepared the invalid warrant, he may not argue that he

reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid"). The type of Fourth Amendment violation that occurred in this case, blind reliance on a warrant wholly lacking in probable cause, can and should be deterred by excluding the fruits of the illegal search, and the deterrent effect of suppression is substantial enough to "outweigh any harm to the justice system." *Herring*, ___ U.S. ___, 129 S. Ct. at 704. For these reasons, we conclude that the good faith exception to the exclusionary rule does not apply in this case.

## IV. CONCLUSION

As discussed above, we conclude that the trial court properly granted John's motion to suppress evidence of the ten composition type notebooks seized during the search of his home for child pornography. The warrant authorizing the search for child pornography was not supported by probable cause. Because the notebooks were found during a search for child pornography, redacting the invalid portions of the warrant does not spare the notebooks from exclusion. Finally, the good faith exception to the exclusionary rule does not apply because a reasonably well trained officer would have realized that the search for child pornography was illegal despite the fact that the search warrant was issued by a judge. For these reasons, we will affirm the trial court's order granting John's motion to suppress.