

**FILED**
October 09, 2024 02:56 PM
ST-2023-CV-00178
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

TYLER PRESTON, )
)
) CASE NO. ST-2023-CV-00178
Plaintiff, )
v. ) JURY TRIAL DEMANDED
)
ISLAND SAINTS CORP., ) **Cite as 2024 V.I. Super 39**
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

**¶1.** **THIS MATTER** is before the Court on Defendant Island Saints Corp.'s ("ISC") Motion to Compel Arbitration and Stay Proceedings filed on July 6, 2023. Tyler Preston ("Preston") responded in opposition on August 4, 2023, and Defendant ISC filed its Reply in Support of its Motion to Compel Arbitration and Stay Proceedings on August 24, 2023. On September 13, 2023, the Court granted Preston's motion to file a surreply, and Preston filed a surreply on October 3, 2023. Pursuant to the Court's August 27, 2024, Order, Preston and ISC supplemented their briefing, with Preston filing his supplement on September 10, 2024, and ISC filing its supplement on September 12, 2024. Having considered the parties' submissions and for the reasons discussed herein, the Court will grant ISC's motion.

### I. RELEVANT BACKGROUND

**¶2.** This matter stems from ISC's termination of Preston's employment as a sales representative. Preston entered into a "Temporary Employment Contract" ("employment contract") with Bellows International, Ltd., VI. ("Bellows") on February 18, 2004. The employment contract has an expiration date of May 1, 2004. After the employment contract expired, Preston continued working for Bellows. No other employment contract or amendments were executed. Article IV of the employment contract,

titled "Mutual Agreement to Arbitrate Claims" ("arbitration agreement"), sets forth the extensive arbitration provisions agreed to by Bellows and Preston. After a merger and several name changes, ISC assumed Bellows operations. On June 13, 2023, Preston filed his complaint for wrongful discharge, intentional infliction of emotional distress, infliction of emotional distress, and negligence against ISC. Soon after the filing of the complaint, ISC sought enforcement of the arbitration agreement in the employment contract.

## II. DISCUSSION

### 1. *The Arbitration Agreement Applies to Affiliates, Successors and Assigns*

¶3. This Court must first address whether the 2004 arbitration agreement in the employment contract signed by Bellows and Preston applies to ISC. The parties do not dispute that Preston entered an arbitration agreement with Bellows.[1] They disagree on whether ISC can enforce the arbitration agreement. Preston claims the employment contract was between him and Bellows, an entity separate and distinct from ISC. He states that the employment contract with Bellows expired in 2004, that Bellows is no longer an active or existing corporation, and that he does not seek to enforce any provision of the employment contract. Preston also claims that Bellows did not harm him, is not a party to the litigation, and his claims are based exclusively on his employment with ISC. Preston next claims that while he was employed by ISC, he never had an employment contract with ISC, and there was no agreement to arbitrate between him and ISC. Specifically, Preston contends that since ISC is a nonsignatory and nonparty to the expired contract, ISC cannot seek to compel arbitration under the arbitration agreement.

---

[1] Compl. at ¶ 6; Pl's Opp'n to Motion to Compel and Arbitration and Stay Proceeding at 1; Defendant Islands Saints Motion to Compel Arbitration and Stay Proceedings at 1.

¶4.     ISC, on the other hand, argues that Bellows is ISC's predecessor-in-interest, and the arbitration agreement specifically covers future claims against Bellows, its successors, and all entities affiliated with Bellows. ISC claims that Preston was employed by Bellows affiliates or successors-in-interest as a sales representative from the execution of the arbitration agreement until he was terminated by ISC in November 2022. ISC's position is that it can compel Preston's arbitration since the arbitration agreement applies to future claims of affiliated entities and successors-in-interest of Bellows, and ISC is both an affiliated entity and a successor-in-interest to Bellows. The Court finds that ISC can enforce the arbitration agreement.

¶5.     As ISC explained, Bellows has assumed different corporate identities in the last decade. Its relevant corporate history shows that on December 30, 2011, three Virgin Islands corporations, namely, Bellows International, Ltd., Leeward Islands Management Company, Inc., and West Indies Corporation filed merger documents with the Office of the Lieutenant Governor. On January 9, 2012, the merger documents were approved. The assets and obligations of the three entities were transferred to the surviving corporation, West Indies Corporation.[2] In January 2012, West Indies Corporation legally changed its name to Topa Equities VI Corporation[3] and in February 2022, Topa Equities VI Corporation legally changed its name to Islands Saints Corp.,[4] which is the party named in the instant action. The Court finds that ISC has presented sufficient evidence to show that it is a successor to Bellows.

---

[2] ISC Ex. 1, January 9, 2012, Certificate of Merger.

[3] ISC Ex. 2, January 17, 2012, Certificate of Name Change Amendment.

[4] ISC Ex. 3, February 24, 2022, Certificate of Name Change Amendment.

¶6.    Preston's contention that the arbitration agreement is not applicable since the employment

agreement is exclusively between Preston and Bellows is not supported by its plain language. Article

IV, Paragraph 2 of the Employment Agreement negates Plaintiff's argument. It provides that:

> Employer and Temporary Employee mutually consent to the resolution by
> arbitration of all claims or controversies ("claims"), past, present or future, whether
> or not arising out of their employment relationship or the termination thereof, that
> Employer may have against Temporary Employee or that Temporary Employee
> may have against and of the following (1) the Employer, (2), its officers, directors,
> employees or agents in their capacity as such or otherwise, (3) the Employer's
> parent, subsidiary and affiliated entities, (4) the benefit plans or the plans' sponsors,
> fiduciaries, administrators, affiliates and agents, and/or (5) all successors and
> assigns of any of them.[5]

ISC falls within the category of entities covered by the arbitration agreement.  ISC is an affiliated

entity of Bellows and, by way of the merger, a successor-in-interest of Bellows.  Thus, when Preston

signed the Arbitration Agreement with Bellows, he agreed not only to arbitrate his claims with

Bellows but also with Bellows' affiliated and successor entities. *Foy v. Ambient Techs., Inc.*, 2009

U.S. Dist. LEXIS 52136, *4, 2009 WL 1750033, *2 (D.V.I. June 19, 2009) (holding that claims

against the parent company and employee were covered by arbitration provision which permits

arbitration of claims against employee and parent company, nonsignatories to the agreement).

¶7.    Generally, contracts may only be enforced by the executing parties. *Lopez v. Renaissance St.*

*Croix Carambola Beach Resort & Spa*, 70 V.I. 27, 2019 VI Super 6 (V.I. Super. Ct. 2019).[6] However,

---

[5] ISC Ex. A, Temporary Employment Contract, Article IV, ¶ 2.

[6] In *Lopez*, the Court addressed the question of whether Renaissance was a third-party beneficiary of the plaintiff's agreement with JS hospitality and so could enforce an arbitration clause despite the employee not signing a contract with Renaissance. The Court found that Renaissance was an intended third-party beneficiary of the agreement's general provisions but not its arbitration clause. The court explained that the arbitration clause "merely set out a procedure for addressing disputes between Lopez and JS Hospitality. *Lopez*, 70 V.I. at 37. In this instance, paragraph 2 of the arbitration agreement specifically states that it applies to "affiliated entities" and "successors and assigns."

as an affiliate or successor to Bellows, ISC is entitled to enforce the arbitration agreement. Bellows' merger with other entities and the subsequent name changes did not vitiate Preston's agreement to arbitrate disputes covered under the employment contract. As a successor, ISC stepped into Bellows' shoes. *See e.g.*, *Weishaar v. Wells Fargo Bank, N.A.*, 2018 U.S. Dist. LEXIS 148951, *6, 2018 WL 4189696, *3 (D. Kan. Aug. 31, 2018) (holding that as a nonsignatory Wells Fargo Bank could compel arbitration as a successor-in-interest, where the agreement provided "that it applies to claims arising out of Plaintiff's employment that World Savings may have against Plaintiff or that Plaintiff may have against World Savings, including its successors and assigns")[7]; *Employment Solutions Mgmt. v. Partners Pers.-Cental Valley*, 2017 U.S. Dist. LEXIS 218341, *12, 2017 WL 7370971, *12 (C.D. Cal. Nov. 8, 2017) (holding that where agreement states that the "[a]greement shall be binding upon and inure to the benefit of the Parties and their respective heirs, Affiliates, successors, and assigns" this makes the settlement agreement, including the arbitration clause, explicitly binding on future affiliates, heirs, successors, and assigns, entities that might come into existence after the settlement agreement was signed); *Hauptman v. Midland Credit Mgmt.*, 2019 U.S. Dist. LEXIS 230359, *5, 2019 WL 8436961, *2 (N.D. Ill. Jan. 31, 2019) (holding that the current owners of account have the right to enforce the arbitration clause where the agreement extends to the original signatory party's "successors and assigns"); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 291 (4th Cir. 2020) (vacating order denying motion to compel arbitration and noting that "the arbitration agreement explicitly applies to

---

[7] In *Weishaar v. Wells Fargo Bank,* the plaintiff began working for World Savings Bank, Wells Fargo's predecessor, in 2000 and also executed the Mutual Agreement to Arbitrate Claims in 2000. The plaintiff was terminated from employment with Wells Fargo Bank in 2017, seventeen (17) years after the plaintiff commenced her employment with World Savings Bank. In 2006, during the pendency of the plaintiff's employment, World Savings' parent company, Golden West Financial Corporation was acquired by Wachovia Corporation. Wachovia subsequently merged with Wells Fargo Bank in 2008. The Cour found that, as successor, Wells Fargo Bank was entitled to enforce the arbitration agreement. *Weishaar v. Wells Fargo Bank, N.A.*, 2018 U.S. Dist. LEXIS 148951, *2-6.

'successors' and 'assigns,' terms that by definition refer to parties whose identities cannot be known until some point in the future").[8] As an affiliate or successor-in-interest to Bellows, ISC can enforce the arbitration agreement.

¶8.     Preston contends that the name on the merger document ("Bellows International Ltd.") and the name on the employment contract ("Bellows International Ltd., VI") are relevant in determining whether Bellows is even part of the merger documents.[9]  Preston suggests that the entity in the 2012 Certificate of Merger differs from the entity with which Preston signed the employment agreement. The Court finds that this argument lacks merit as Bellows International, Ltd. is clearly identified as a Virgin Islands corporation on the Certificate of Merger.

### 2.  *Expiration of Arbitration Agreement*

¶9.     Preston argues that the employment agreement expired by its own terms and, even if the employment agreement was between the parties to the instant lawsuit, there is no indication that the parties intended the arbitration provision to bind the parties for almost twenty years after its

---

[8] In *Mey v. Direct TV* the Fourth Circuit noted the following definitions:

> An affiliate is commonly understood as "a company effectively controlled by another or associated with others under common ownership or control." *Affiliate*, Webster's Third New International Dictionary 35 (2002); *see Affiliate*, Black's Law Dictionary 67 (9th ed. 2009) ("[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation").
>
> *Assign & Assignee*, Black's Law Dictionary 135-136 (9th ed. 2009) (defining the noun of "assign" as "assignee," which is defined as "[o]ne to whom property rights or powers are transferred by another"); *Assign & Assignee*, Webster's Third New International Dictionary 132 (2002) (defining the noun of "assign" as "assignee," which is defined as "one to whom a right or property is legally transferred").
>
> *Successor*, Black's Law Dictionary 1569 (9th ed. 2009) ("A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation."); *Successor*, Webster's Third New International Dictionary 2282 (2002) ("one that follows"); *Successor & Succeed*, The Am. Heritage Dictionary of the English Language 1740 (5th ed. 2011) (defining "successor" as "[o]ne that succeeds another" and "succeed" as "[t]o come next in time or order; [t]o replace another in office or position").

*Mey v. DIRECTV, LLC*, 971 F.3d at, 289, 291.

[9] Surreply to Motion to Compel Arbitration and Stay Proceedings, at 2.

expiration.[10] The Supreme Court of the Virgin Islands has held an arbitration agreement contained in an expired contract to be enforceable. *Whyte v. Bockino,* 69 V.I. 749, 765 (V.I. 2018) (finding that even though the employment contract expired, the parties continued to manifest an intent to carry on the employment contract until the employee's termination).[11] The *Whyte* Court determined that "the arbitration clause survived by way of an implied contract, as the parties did not demonstrate an intent for the arbitration clause to end" after the expiration of the employment contract. *Id.*

¶10.    An implied contract "may arise wholly or partially by the parties' conduct." *Whyte,* 69 V.I. at 764 (citing *Peppertree* Terrace v. Williams 52 V.I. 255, 241 (V.I. 2009)). After the expiration of an employment contract, the parties to the contract may continue to perform under the contract terms. In such instances, the employment relationship is generally governed by an implied contract that incorporates the terms or substantially the same terms of the expired contract. *Id.* at 764. Continuance of employment after the expiration of a written employment contract supports the existence of an implied employment contract.

¶11.    Here, Preston continued to be employed by Bellows after the expiration of his employment contract on May 1, 2004, and he continued to work for Bellows until the merger in 2011 and then the successor entities until November 8, 2022, the date of his termination. Considering Preston and Bellows and its successors' conduct–continued, uninterrupted employment as a sales representative with no new employment agreement–this Court finds that an implied contract did exist. There is no evidence on the record that Preston or Bellows and its successors intended the arbitration agreement

---

[10] Surreply to Motion to Compel Arbitration and Stay Proceedings at 1-2.

[11] The Virgin Islands Supreme Court did not hold that the termination must take place within a specific number of months or years after the expiration of a contract. The critical question is whether the parties intended the arbitration clause to end. If no such intention is shown, then the implied contract continues until termination, whether that termination occurs two years or twenty years after the expiration of the contract. *See also, Weishaar v. Wells Fargo Bank,* supra.

not to survive, nor is there any indication on the record of their intent to disavow or repudiate the arbitration agreement before Preston's termination. As in *Whyte*, the arbitration agreement survived by way of an implied contract. Preston remained continuously employed as a sales representative for Bellows and its successors-in-interest until his termination on November 8, 2022.

¶12. Preston argues that this case is distinguishable from *Whyte*. He pointed out that the contract at issue in *Whyte* has a "survival clause," providing that the arbitration clause would remain in effect after an employee's termination. In *Whyte*, the Supreme Court pointed out that evidence that the parties to the contract intended the arbitration provision to survive the expiration of the contract was further demonstrated by the fact that the employment agreement contained a "survival clause," which specifically referenced that the arbitration clause was to survive post-termination. *Id.* at 765-66. However, the presence or absence of a survival clause in an employment agreement is not always dispositive of whether the employment agreement's arbitration provisions survive beyond the agreement's expiration.

¶13. In *Whyte*, the Supreme Court cites *Huffman v. Hilltop* Cos., 747 F.3d 391 (6th Cir. 2014). In *Huffman,* the employees executed an employment agreement with the employer that contained both an arbitration clause and a survival clause, but the survival clause did not list the arbitration clause. 747 F.3d at 393. The *Huffman* court had to decide whether the omission of the arbitration clause from the survival clause in the agreement constituted a clear implication that the parties intended the arbitration clause to expire with the employment agreement. *Id.* The court held that the strong presumption in favor of arbitration counsel in favor of arbitration and the parties' omission of the arbitration clause in the survival clause did not clearly imply that the arbitration clause had no post-expiration effect. *Id.* at 398. Thus, even where the arbitration clause was omitted from

the survival clause, the *Huffman* court nonetheless held that the arbitration clause survived. *Id.* For a court to find otherwise, it must be clear that the parties intended for the arbitration clause to lapse. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998) (noting that "an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption"); *QAD Inc. v. St. Jude Med., LLC*, 2019 U.S. Dist. LEXIS 112920, \*7, 2019 WL 8810352, \*7 (N.D. Cal. July 8, 2019) ("Courts routinely enforce arbitration clauses in expired contracts."). In this instance, the absence of a survival clause does not prove that the arbitration clause did not survive the termination of the employment contract.

### 3.    *Interstate Nexus Established*

¶14.    The Virgin Islands Supreme Court has settled the issue of whether the Federal Arbitration Act ("FAA") applies to the Virgin Islands. *Whyte,* 69 V.I. 757-63. The Supreme Court held in *Whyte* that the FAA applies to the Virgin Islands through the Commerce Clause or the Territorial Clause. It went on to further state that regardless of whether Congress utilized its Commerce Clause Power or Territorial Clause Power in making the FAA applicable to the Virgin Islands, "a contract comes within the purview of the FAA if an interstate nexus is shown." *Id.* at 760. Therefore, "a party seeking to compel arbitration must not only show that an agreement to arbitrate exists, but also show that the contract evidences an interstate nexus." *Id.* at 760-61; *see also, Cruz v. St. Croix Financial Center, Inc.*, 2024 V.I. 11, 14 (V.I. 2024) ("a contract comes within the purview of the FAA only when an interstate nexus is shown"). The "parties' agreement need not be *in* interstate commerce nor have a *substantial* effect on interstate commerce." *Whyte,* 69 V.I. at 761. All that is required is that "the economic activities of at least one of the parties demonstrates a nexus to interstate commerce." *Id.*

¶15.    The party seeking to apply the FAA carries the burden of proving an interstate nexus. *Cruz*, 2024 V.I. at 16. "[T]he burden on the compelling party to show that a contract evidences an interstate nexus is relatively low." *Whyte*, 69 V.I. at 761. "[E]ven the slightest nexus is sufficient." *Id*. at 762. The *Cruz* Court has made clear that although the burden is relatively low, the "unsworn representations of an attorney are not evidence." *Cruz*, 2014 V.I. at 10. Therefore, the party seeking to compel arbitration must support its motion with admissible evidence establishing an interstate nexus. *Id*.

¶16.    ISC has supplemented its motion with the affidavit of Chanse McCain, General Manager of ISC. In his Affidavit, McCain explains that ISC imports hundreds of products,[12] including beer, wine, and spirits, manufactured in various parts of the world and the continental United States to the U.S. Virgin Islands and sells those goods wholesale to the U.S. Virgin Islands retailers.[13] He further states that the majority of the products ISC imports to the U.S. Virgin Islands are shipped to the U.S. Virgin Islands via sea from ISC's distribution center in Florida, and ISC staff routinely communities with the manufacturers and sellers of the products it imports located in the continental United States and other parts of the world.[14]

¶17.    Courts in the Virgin Islands have found an interstate nexus where the employer imports goods or products to the Virgin Islands from the U.S. mainland or internationally. *Whyte v. Bockino*, 69 V.I. 749, 762 (V.I. 2018) (employer established an interstate nexus where the employer's business imported goods to the Virgin Islands that arrived in St. Croix via container ship); *Ayala v. World*

---

[12] ISC d/b/a Bellows International Business License grants the following licenses: (1) Tobacco Wholesaler, (2) Liquor Wholesaler, (3) Retail Shop & Store-No Liquor/Beer, (4) Hemp Products Retailer, (5) Wholesaler Other than Liquor. ISC Ex. 4.

[13] McCain Aff. at ¶¶ 4-5.

[14] McCain Aff. at ¶¶ 6 and 10.

*Fresh Mkt.*, LLC, 2021 VI SUPER 15U, ¶ 9 (V.I. Super. Ct. 2021) (employer met burden to prove contract affected interstate commerce where its grocery store imports goods to the Virgin Islands, products has to travel by plane and boat from all over the United States and international destinations and grocery clerk handled grocery items that were not produced or manufactured in the Virgin Islands and shipped in interstate commerce to the Virgin Islands); *Hendricks v. Pinnacle Servs., LLC*, 72 V.I. 630, 635, 2020 VI SUPER 037 (V.I. Super. Ct. 2020) (security guard guarding of oil refinery facility which is engaged in interstate commerce has an interstate nexus); *Lopez v. Renaissance St. Croix Carambola Beach Resort & Spa*, 70 V.I. 27, 32, 2019 VI SUPER 6 (V.I. Super. Ct. 2019) (interstate nexus exists where resort enticed guests from out of the territory and imported goods required for its daily functioning). Like the businesses in the cases mentioned above, ISC imports products from outside the Territory. Through McCain's Affidavit, ISC has shown that its economic activity demonstrates an interstate nexus for the FAA to apply to the arbitration agreement.

### 4. *All Claims are Subject to Arbitration*

¶18.    In its opposition to ISC's motion to compel arbitration, Preston argues that its tort claims are not subject to the arbitration agreement in the employment contract.[15]  Conversely, ISC argues that all of Preston's claims are subject to the arbitration agreement.[16]  Since an implied contract exists, its terms are enforceable. *Whyte*, 69 V.I. at 765. The arbitration agreement in the employment contract covers not only Preston's wrongful termination claim but also "tort claims" and "any and all related

---

[15] Opp'n to Mot. To Compel Arbitration and Stay Proceedings at 7.

[16] ISC Reply in Support of its Motion to Compel Arbitration and Stay Proceedings at 2.

employment disputes."[17] All of Preston's claims, irrespective of how they are couched, labeled, or pleaded in his complaint, fall within the ambit of the arbitration agreement.

### III.   CONCLUSION

For all the reasons stated above, the Court shall grant ISC's Motion to Compel Arbitration and Stay Proceedings. Accordingly, it is hereby

**ORDERED** that Defendant Island Saints Corp.'s Motion to Compel Arbitration and Stay Proceedings is **GRANTED**; and it is further

**ORDERED** that this matter shall be **STAYED** pending arbitration; and it is further

**ORDERED** that a copy of this Order shall be directed to counsel of record.

Date: October 9, 2024

**CAROL THOMAS -JACOBS**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By:
Donna Donovan
Court Clerk Supervisor   10 / 9 / 2024

---

[17] *See* Ex. A, Article IV at ¶3.