**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4185
_____

PEOPLE OF THE VIRGIN ISLANDS,

                                        Petitioner

v.

TYDEL B. JOHN,

                                        Respondent

_____

On Writ of Certiorari from the Supreme Court
of the Virgin Islands
(S. Ct. Crim. No. 2008-091)

_____

Argued December 14, 2010

BEFORE:  McKEE, *Chief Judge*, FUENTES and SMITH,
*Circuit Judges*

(Filed: August 15, 2011)

Vincent F. Frazer, Esq.
Elliott M. Davis, Esq.

1

Paul J. Paguin, Esq. (Argued)
Department of Justice
34-38 Kronprindesens Gade
GERS Building, Second Floor
St. Thomas, VI 00802
    *Counsel for Petitioner Government of the Virgin Islands*

Martial A. Webster, Sr., Esq. (Argued)
116 Queen Cross Street
Frederiksted, St. Croix, VI 00840
    *Counsel for Respondent Tydel B. John*

---

OPINION OF THE COURT

---

SMITH, *Circuit Judge.*

Detective Sergeant Naomi Joseph of the Virgin Islands Police Department applied for a warrant to search Tydel John's home for child pornography, relying solely on an affidavit that established only probable cause to believe that she would find evidence that he had sexually assaulted several children at the school where he taught. In her affidavit, Joseph did not allege any direct evidence that John possessed child pornography, did not aver the existence of any connection between the two crimes, and did not claim either a good faith belief in such a connection or any basis for thinking that one had been established. In general, the affidavit provided no reason to believe that a person who has

2

committed child sexual assault would be likely to possess child pornography. Despite these deficiencies, a Virgin Islands Superior Court judge issued the warrant, and Joseph's search turned up incriminating documents (but no child pornography). We granted certiorari to determine whether this evidence was properly suppressed.

I

On November 27, 2007, following a presentation by the Virgin Islands Domestic Violence Sexual Assault Council, several of John's sixth-grade students told school officials that John had touched them inappropriately. The school passed this information on to the police, and Joseph was tasked with investigating. She began by interviewing the complaining witnesses, several of whom accused John of sexually assaulting them in his classroom. The girls also advised Joseph that John maintained two spiral notebooks, one blue and one red, in which he routinely "ma[de] notations . . . regarding his students." One student reported that John had written "inappropriate things about the female students of his current class and previous classes" in the blue notebook. According to the witnesses, John carried the notebooks with him to and from school each day in his work bag.

With this information in hand, Joseph sought a warrant authorizing her to search John's home. Joseph's affidavit set forth the above facts in somewhat more detail, and averred that "persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, photographs, [and] computer files, in their homes and on their computer[s]." In addition to the red and

blue notebooks, the warrant application sought permission to collect from John's home pornographic magazines, pornographic photographs of children, and computer files containing pornographic notes and photographs of children. A Virgin Islands Superior Court judge issued the warrant, as requested, on December 3, 2007, and Joseph led the law enforcement team that executed it shortly thereafter.

According to Joseph's testimony at John's suppression hearing, it was "[r]elatively early in the search" that the officers located a black bag containing the red and blue spiral notebooks mentioned in the affidavit. Joseph allowed the search to continue, because she was still "[l]ooking for any pornographic photos of children." The officers under her charge found no such photos, but they nevertheless carted away several computers and ten black and white composition-book-style journals, in addition to the two spiral notebooks that the witnesses had identified. The journals (labeled "Tydel John Journals," with dates) were retrieved from John's bedroom closet and a bookshelf, and did not resemble the spiral notebooks—which had already been seized by the time the journals were found.

While there is nothing in the "Tydel John Journals" that would constitute child pornography, they do contain evidence germane to the charges of aggravated rape, unlawful sexual contact, child abuse, and child neglect that John now faces. He therefore moved to exclude them from trial, arguing that Joseph's search warrant was invalid and that the search violated the Fourth Amendment. The Superior Court granted the motion, and the Supreme Court of the Virgin Islands affirmed in a per curiam opinion. 52 V.I. 247 (2009).

4

The Court held that the search for child pornography was not supported by probable cause, *id.* at 256, and that any search of the home that occurred after the blue and red spiral notebooks had been found was thus beyond the permissible scope of the warrant's execution, *id.* at 260. It then addressed the so-called "good faith" exception to the exclusionary rule, observing that the exception does not apply in the case of a warrant obtained on the basis of an affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 261 (quoting *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002)). Because an examination of Joseph's affidavit revealed "not a single assertion that John was in any way associated with child pornography," the court concluded that "the officers executing the warrant blindly relied on the fact that the warrant was issued by a judge and disregarded the fact that their search was not supported by probable cause." *Id.* at 262. In the view of the Virgin Islands Supreme Court, such "blind reliance" on a warrant issued in the complete absence of probable cause "can and should be deterred by excluding the fruits of the illegal search, and the deterrent effect of suppression is substantial enough to outweigh any harm to the justice system." *Id.* at 263. The "good faith" exception therefore did not save the evidence from suppression. *Id.*

A panel of this court granted the Virgin Islands' petition for a writ of certiorari, "limited to the question whether the decision of the Supreme Court of the Virgin Islands is inconsistent with *Herring v. United States*, 129 S. Ct. 695 (2009), in its application of the good faith exception

5

to the exclusionary rule."  Our order also directed the parties "to explain in their briefing the basis, if any, upon which this Court has certiorari jurisdiction to review the decision of the Supreme Court of the Virgin Islands as a 'final decision' within the meaning of 48 U.S.C. § 1613."

II

We first address the jurisdictional question propounded in our order granting certiorari, beginning with the text of the relevant statute.  Section 1613 defines the relations between the courts of the United States and the courts of the Virgin Islands.  It provides that, for the time being, "the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had."  The same section elsewhere states:

> The relations between the courts established by the Constitution or laws of the United States and the courts established by [Virgin Islands] law with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings.

6

Reading these sentences together, it is plain that Congress intended for this court's certiorari jurisdiction vis-à-vis the Virgin Islands Supreme Court to mirror the United States Supreme Court's certiorari jurisdiction vis-à-vis any of the fifty state courts of last resort. We can therefore review by certiorari a decision of the Virgin Islands Supreme Court if that decision is "final" within the meaning of the United States Supreme Court's certiorari jurisdiction statute, 28 U.S.C. § 1257.

A ruling on a suppression motion is interlocutory in nature, and therefore does not obviously qualify as a "final decision." *See Di Bella v. United States*, 369 U.S. 121, 131 (1962). The federal Supreme Court has nevertheless held that an order granting such a motion is reviewable:

> Although respondent has yet to be tried in state court, the suppression ruling challenged herein is a "final judgment" within the meaning of 28 U.S.C. § 1257(3), and we have jurisdiction over this case. In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 477 (1975), we identified four categories of cases where the Court will treat a decision of the highest state court as final for § 1257 purposes even though further proceedings are anticipated in the lower state courts. This case . . . falls within the category which includes "those situations where the federal claim has been finally decided . . . but in which later review of the federal issue cannot be had, whatever the ultimate outcome of the case." 420 U.S., at 481. In this case should the State

7

convict respondent at trial, its claim that certain evidence was wrongfully suppressed will be moot. Should respondent be acquitted at trial, the State will be precluded from pressing its federal claim again on appeal.

*New York v. Quarles*, 467 U.S. 649, 651 n.1 (1984). This logic is directly applicable here. The Virgin Islands Supreme Court has "finally decided" John's federal constitutional claim, and re-examination of its decision on a later appeal will prove impossible: A conviction would moot the issue, and an acquittal would preclude the prosecution from rearguing the point on appeal. *See id.*; *United States v. Carrillo-Bernal,* 58 F.3d 1490, 1494–95 (10th Cir. 1995) (detailing the historical development of the rule against government appeals of not-guilty verdicts); *Gov't of the Virgin Islands v. Christensen*, 673 F.2d 713, 715 (3d Cir. 1982) (collecting cases). The Virgin Islands Supreme Court's decision is therefore "final" for purposes of certiorari jurisdiction, and § 1613 gives us authority to review it.

The parties have raised the possibility that 18 U.S.C. § 3731 also serves as a basis for our jurisdiction. That section provides, in pertinent part, that "[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . , not made after the defendant has been put in jeopardy." We treat the Government of the Virgin Islands as a prosecutorial arm of the federal government, so § 3731 permits it to take certain interlocutory appeals. *Christensen*, 673 F.3d at 716. Until 2004, the Appellate Division of the District Court of the Virgin Islands heard appeals from the Virgin Islands Superior

8

Court; the Appellate Division's decisions were then appealable to this court. *See Gov't of the Virgin Islands v. Rivera*, 333 F.3d 143, 145–46 (3d Cir. 2003). Because the Appellate Division was part of the District Court of the Virgin Islands, appeals from its decisions were treated "no differently than appeals taken from any other federal district court."[1] *Id.* at 146. Thus, in *Gov't of the Virgin Islands v. Charleswell*, 24 F.3d 571, 574 (3d Cir. 1994), we concluded that § 3731 gave us jurisdiction over appeals from the Appellate Division filed by the Government of the Virgin Islands.

The Government argues that the establishment of the Virgin Islands Supreme Court does not change anything. In its view, § 3731 gives us jurisdiction over interlocutory criminal appeals from the Virgin Islands Supreme Court filed by the Government, just as it gave us jurisdiction over the same appeals from the Appellate Division. This position is inconsistent with the text of § 3731, which refers to "an appeal" from a "district court." With the change in the organization of the Virgin Islands courts, the case we are today asked to decide comes from the Virgin Islands Supreme Court—which is not part of the District Court of the Virgin Islands or any other "district court." Just as importantly, our authority to re-examine decisions of the courts of the Virgin Islands (as distinct from the federally established courts with

---

[1] The statute creating the Appellate Division was repealed when the Virgin Islands created the Virgin Islands Supreme Court. The Appellate Division will cease to exist when the last case pending on its docket is decided. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359 n.2 (3d Cir. 2007).

jurisdiction over that territory) is limited to "*review by writ of certiorari* [of] all final decisions of the highest court of the Virgin Islands from which a decision could be had." 48 U.S.C. § 1613 (emphasis added). Issuance of a writ of certiorari and the "appeal" contemplated by § 3731 are discrete forms of review: the former is discretionary in nature, while the latter is generally available to a losing litigant as of right. Our review of Virgin Islands Supreme Court cases by certiorari is meant to permit correction of important errors while preserving the territorial courts' ability to develop local law and institutional traditions, in advance of the eventual goal of allowing direct United States Supreme Court certiorari review (eliminating entirely any review by this court). *See Pichardo v. Virgin Islands Comm'r of Labor*, 613 F.3d 87, 96–97 (3d Cir. 2010); 48 U.S.C. § 1613. Allowing as-of-right appeals in a certain class of cases under § 3731 would obstruct this aim by hindering the development of Virgin-Islands-specific case law and undercutting the authority of the Virgin Islands Supreme Court. We therefore review its decisions at our discretion rather than as a matter of course: that is, by writ of certiorari rather than on appeal.

Because this is not an "appeal" and does not come to us from a "district court," § 3731 cannot apply. Section 1613 is the sole source of our authority to decide this case.

III

We granted certiorari to determine whether the Virgin Islands Supreme Court's ruling is inconsistent with *Herring v. United States*, 129 S. Ct. 695 (2009), in which the Supreme Court addressed the "good faith" exception to the

10

exclusionary rule that it had previously established in *United States v. Leon*, 468 U.S. 897 (1984). Because "the exclusionary rule is not an individual right," but is instead a means of deterring Fourth Amendment violations, it "applies only where it 'result[s] in appreciable deterrence.'" *Herring*, 129 S. Ct. at 700 (quoting *Leon*, 468 U.S. at 909). Suppression of valuable evidence imposes social costs by hindering the courts' truth-seeking function, but the Supreme Court has determined that those costs are outweighed by the need to prevent illegal and culpable law enforcement conduct. But because some unconstitutional conduct is unlikely to be deterred by the threat of sanctions, exclusion is not a blanket remedy. Where, for instance, a reasonable officer cannot have been expected to know that what he was doing was unconstitutional, he is unlikely to be discouraged in his actions by the knowledge that the fruits of unconstitutional searches will be suppressed. There is no sense in suppressing whatever evidence he may have uncovered in such a case, for the limited or nonexistent deterrent value of exclusion does not outweigh the cost. *See Davis v. United States*, 564 U.S. ---, slip op. at 6–9 (2011). Accordingly, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 129 S. Ct. at 702.

The *Leon* rule is a specific application of this general principle. As *Herring* described it, *Leon* holds that "[w]hen police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently

11

invalidated search warrant." *Id.* at 701 (quoting *Leon*, 468 U.S. at 922). A warrant represents judicial authorization of a particular search or seizure, and it is thought that exclusion will not deter police from relying on an invalid warrant unless the police should reasonably have known that the warrant's issuance would be found unconstitutional. We have identified "four limited circumstances" in which a police officer's reliance on a warrant will not be considered "objectively reasonable":

1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Tracey*, 597 F.3d 140, 151 (2010) (citing *Zimmerman*, 277 F.3d at 436–37). "These limited exceptions are consistent with the approach taken in *Herring* because each of these circumstances involve[s] conduct that is 'deliberate, reckless, or grossly negligent,' and thus the

12

benefits of deterring future misconduct 'outweigh the costs' of excluding the evidence." *Id.* (quoting *Herring*, 129 S. Ct. at 700, 702).

John invokes the third of these exceptions to the *Leon-Herring* rule, arguing that Joseph's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[2] *Tracey*, 597 F.3d at 151.

---

[2] John concedes that the warrant was valid insofar as it authorized a search for the red and blue spiral notebooks that had been specifically identified as containing evidence of his alleged crimes. He seeks only to suppress the journals, which were found after the search's admittedly legal objects had been seized.

The panel is in agreement that Joseph's affidavit did not provide probable cause to believe that any evidence or contraband other than the red and blue notebooks would be found in John's house. *See infra*, at 14–15; *post*, at 3, 5, 6–7. Generally, "where the evidence authorized to be seized exceeds the underlying probable cause justification, the proper course is for the court to redact that information from the affidavit of probable cause." *United States v. Yusuf*, 461 F.3d 374, 389 (3d Cir. 2006). In this context, "redaction" means:

> [S]triking from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment. Each part of the search authorized by the warrant is examined separately to determine whether it is impermissibly general or unsupported by probable cause. Materials seized under the authority of those parts of the warrant struck for

We agree, because the catalogue of the affidavit's "indicia of probable cause" with respect to child pornography is completely empty. The Virgin Islands Supreme Court was correct in describing the affidavit as "wholly lacking in probable cause," because "[e]ven a cursory reading of Officer Joseph's affidavit reveals that there is not a single assertion that John was in any way associated with child pornography." 52 V.I. at 263, 262. To be sure, the affidavit provides reason to believe that John had committed sex crimes against his students on school property, and that he kept two particular pieces of evidence of those crimes in his home. But those allegations are not sufficient to establish—or even to hint at— probable cause as to the wholly separate crime of possessing child pornography.

A belief in the existence of probable cause in this case requires believing that a person who has sexually assaulted a child is also likely to collect child pornography. Putting aside for the moment the reasonableness of such an assumed connection, that latter belief is not stated anywhere in

---

> invalidity must be suppressed, but the court need not suppress materials seized pursuant to the valid portions of the warrant.

*Id*. (quoting *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982)). Because there was no probable cause to justify continuing to search John's home for child pornography once the two specifically identified notebooks had been discovered, all evidence seized after that point—including the journals that are the subject of this appeal—is subject to suppression unless some exception to the exclusionary rule applies.

14

Joseph's affidavit. The closest the affidavit comes is the averment that "persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, photographs, [and] computer files, in their homes and on their computer[s]." But all this statement can be read to allege is that John, who stands accused of sexually abusing children, "customarily hide[s]" evidence of *that* crime in his home and/or on his computer. It does not allege that an individual in John's position also "customarily hide[s]" evidence of *other* crimes, in his home or anywhere else. Without such an allegation, it was unreasonable to conclude that there was probable cause to believe that John possessed child pornography.

It should be clear that the existence of an assault-pornography correlation is a question of fact that Joseph was required to allege (and to support with averments stating the basis for the allegation) if she desired to rely on it as the basis for a probable cause determination. It is not a legal issue to be entrusted to a magistrate's judgment as a matter of abstract doctrine. Either a correlation exists between the conduct underlying one crime and the conduct underlying another, or it does not. Forming a belief regarding the answer to that question does not involve interpreting a statute, or analyzing a Supreme Court decision, or applying some common law doctrine. Because the question is one that can be resolved only through the evaluation of evidence, it must be alleged on the face of the affidavit in order to be considered for purposes of determining probable cause.

As the Second Circuit wrote in a case quite similar to our own, "'[i]t is an inferential fallacy of ancient standing to

15

conclude that, because members of group A' (those who collect child pornography) 'are likely to be members of group B' (those attracted to children), 'then group B is entirely, or even largely composed of, members of group A.'" *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (quoting *United States v. Martin*, 426 F.3d 68, 82 (2d Cir. 2005) (Pooler, J., dissenting)). Then-Judge Sotomayor went on:

> Although offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation [that a person who has committed one crime has likely committed the other] drawn by the district court. Perhaps it is true that all or most people who are attracted to minors collect child pornography. But that association is nowhere stated or supported in the affidavit. *See* [*Illinois v. Gates*, 462 U.S. 213, 238 (1983)] (probable cause assessments are to be made from "all the circumstances set forth in the affidavit"); [*United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006)] ("All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath" (internal marks and citation omitted)). . . . [A]n individual's Fourth Amendment right cannot be vitiated based on fallacious inferences drawn from facts not supported by the affidavit.

16

*Id.* (footnotes omitted). Similarly, in *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008), the Sixth Circuit held that it was "entirely unreasonable" for *Leon* purposes "for the officer executing the warrant either to infer that nexus [between child molestation and possession of child pornography] herself or to rely on her own subjective knowledge [of the existence of such a nexus] to claim reasonable reliance on the warrant."

Just so in this case. We acknowledge the possibility that studies might show that a correlation exists between one crime and the other; or perhaps extensive investigatory experience might reveal a pattern substantial enough to support a reasonable belief on the part of a police detective. But Joseph's affidavit did not allege the existence of the connection in question, let alone any evidentiary reason to believe in it. She should not, therefore, be permitted either to draw an inference from facts not stated in the affidavit or to rely on her own personal knowledge. She was instead required to state all the relevant facts in the warrant affidavit and submit them to judicial scrutiny. *See, e.g.*, *United States v. Stearn*, 597 F.3d 540, 549 (3d Cir. 2009); *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) ("Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon only that information which is found within the four corners of the affidavit.") (citation and internal quotation marks omitted); *Zimmerman*, 277 F.3d at 431 n.3 ("We, of course, must confine ourselves to the facts that were before the issuing magistrate—in other words, the affidavit.").

17

Requiring that a warrant applicant state explicitly her belief in the existence of a correlation like the one on which Joseph apparently relied, as well as reasons justifying such a belief, is not inconsistent with the fact that these affidavits are typically drawn by laypersons rather than attorneys. Even police officers who lack legal training are expected to know of the requirement that the factual basis for a probable cause determination must be stated in the affidavit. We demand nothing more than that an officer seeking a warrant explain why she is justified in entering a person's home and searching through his belongings. This insistence that law enforcement comply with a bedrock principle of the Fourth Amendment cannot be dismissed as the imposition of an unnecessary or hypertechnical obligation.

Policing this requirement easily passes the cost-benefit analysis set forth in *Herring*. Reliance on a warrant affidavit that omits a fact critical to any reasonable belief in the existence of probable cause is the sort of thing we can expect the exclusionary rule to deter: all an investigator must do to avoid exclusion is comply with the well-known duty to spell out the complete factual basis for a finding of probable cause within the affidavit's four corners. And deterring police from submitting (and magistrates from accepting) affidavits that completely omit crucial factual allegations is a preeminently worthy goal. Reckless or grossly negligent conduct is enough to justify suppression, and *Leon* and its progeny establish that an officer's conduct is sufficiently deliberate and culpable when she relies on a warrant that is as devoid of probable cause as this one. *See Herring*, 129 S. Ct. at 702; *Tracey*, 597 F.3d at 151. Joseph's reliance on the warrant was "entirely

18

unreasonable," *Tracey*, 597 F.3d at 151; her behavior was, at a minimum, grossly negligent. Moreover, applying *Leon* in cases like the one at bar would risk encouraging police to seek permission to search for evidence of crimes unrelated to any known facts, based upon nothing more than unstated and unsupported hunches. It would reward law enforcement for grounding warrant applications in unexamined biases and stereotypes rather than in conscientious assessment of the facts and circumstances uncovered by the investigation. *Leon* and its progeny were never intended to ratify such unjustified intrusions into the privacy safeguarded by the Fourth Amendment. The "good faith" exception does not shield Joseph's actions here. The evidence obtained pursuant to the invalid portion of the warrant (i.e., the portion authorizing a search for child pornography) must be suppressed.

We are not persuaded by the cases that may be cited in support of the contrary conclusion. The prosecution relies on *United States v. Haynes*, 160 F. App'x. 940 (11th Cir. 2005) (per curiam) (unpublished), but that decision did not actually decide the question whether probable cause or sufficient indicia thereof existed. Haynes conceded that the warrant to search his home was valid insofar as it pertained to evidence of enticing a minor to engage in sexual conduct, but argued that the police lacked probable cause to believe he possessed child pornography. He did not, however, mount an argument on appeal that any of the exceptions to the *Leon* doctrine applied. The court therefore had no need to engage in serious analysis of the question whether the executing officers had acted in reasonable reliance on the warrant (though it noted offhandedly that they "clearly" had). *See id.* at 944.

19

Moreover, the opinion leaves unclear whether the court was even faced with the question we address today, because it does not relate whether the warrant affidavit contained an averment purporting to link the suspected crime of child enticement to the search for child pornography. *Haynes* has no bearing on this case.

The Eighth Circuit's decision in *United States v. Colbert*, 605 F.3d 573 (8th Cir. 2010), carries more force than *Haynes*, but is distinct from the case now before us. A witness called police after observing Colbert pushing a five-year-old girl (whom he did not know) on a playground swingset while talking to her "about movies and videos the man had at his home." Upon stopping Colbert's car and conducting a consensual search, police found a police scanner, handcuffs, and a "New York PD" hat. The defendant also admitted speaking to the girl about movies that he kept at his apartment. *Id.* at 575. On this basis the police obtained a warrant to search Colbert's apartment for child pornography, which they recovered and which Colbert moved to suppress. *See id.* at 575–76.

A divided panel of the Eighth Circuit ruled that the warrant was supported by probable cause. The majority argued that a tendency to sexually abuse or exploit children is relevant to the analysis of whether probable cause exists to search for child pornography, asserting that "[t]here is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." *Id.* A suspected proclivity for child molestation was therefore a factor that the magistrate could properly consider in making his probable cause determination. Crucially for our purposes,

20

however, the court did not simply rely on the defendant's inappropriate interest in the little girl, but instead considered it as one of several factors in its probable cause analysis. The defendant had attempted to take the child home to watch movies with him, and according to the court

> it would strain credulity to believe that Colbert was attempting to lure the child there to watch, say, "Mary Poppins" or "The Sound of Music," or to engage in basket weaving or a game of pickup sticks. The circumstances suggest that Colbert intended to victimize the child in some manner, and as the Supreme Court recognized nearly twenty years ago, "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity."

*Id.* (quoting *Osborne v. Ohio*, 495 U.S. 103, 111 (1990)). The implication is that combining the evidence of the defendant's suspected pedophilia with his specific desire to watch movies at his home with an unrelated five-year-old girl provided probable cause for thinking that the movies to be watched were child pornography, intended for use in a seductive manner. The specific reference to watching movies at the defendant's home was crucial to the court's totality-of-the-circumstances assessment that probable cause was present. *See id.* at 577 (distinguishing *Hodson* and *Falso* on the basis that "[n]either case involved an application for a search warrant based on the defendant's contemporaneous attempt to entice a child"). Our case also does not involve a "contemporaneous attempt to entice a child," and there is no suggestion that John had ever attempted to use child

pornography or other videos to ensnare his alleged victims. Because all of the alleged assaults took place *at school*, it makes no sense to suppose that he would have kept child pornography *in his home* to aid him in his criminal endeavor. And at all events, as we have noted, Joseph neither averred the existence of a connection between the two types of conduct nor alleged facts from which the Superior Court judge could reasonably have inferred that such a nexus existed.

Furthermore, for reasons explained above, the Eighth Circuit's assertion that there exists an "intuitive relationship" between two distinct crimes is suspect. Notwithstanding its own precedent requiring courts to confine themselves to the "four corners of the affidavit," *Olvey*, 437 F.3d at 807, the court found probable cause in an affidavit that provided neither evidence for nor an averment of the correlation in question. We consider ourselves bound to refer only to the contents of Joseph's submission to the Superior Court judge who issued the warrant, and (as we have explained) those contents cannot reasonably have been read to establish the requisite indicia of probable cause.

IV

It is settled law that a probable cause affidavit must set forth all the facts upon which the affiant seeks to rely in obtaining a warrant. The affidavit in this case omitted the linchpin allegation on which any reasonable belief in the existence of probable cause must have depended. Joseph therefore cannot be regarded as having acted in "good faith" within the meaning of *Leon*, and the Virgin Islands courts

22

were right to suppress the illegally-seized journals.  We will affirm their judgment.

**Gov't of the Virgin Islands v. John**
**09-4185**

Fuentes, *Circuit Judge*, Dissenting.

In *Davis v. United States*, The Supreme Court made it clear that the sole purpose of the exclusionary rule is to deter Fourth Amendment violations. 564 U.S. ---, slip op. at 6 (2011). We do not apply it to sanction errant magistrate judges. *Id.* at 8. Nor do we apply it when a police officer makes the same legal error as the judge who issued the warrant. Rather, we apply the "extreme sanction of exclusion" only as a "last resort" to deter police conduct that is "deliberate, reckless or grossly negligent." *United States v. Leon*, 468 U.S. 897, 916, 926 (1984); *Davis*, 564 U.S. ---, slip op. at 7, 8; *Herring v. United States*, 555 U.S. 135, 144 (2009). Here, the trial court made no finding that police officer Naomi Joseph acted deliberately, recklessly, or with gross negligence. Thus, I see no support for the proposition that the Majority's ruling will have a beneficial deterrent effect. I respectfully dissent because excluding the evidence in this case imposes great costs and "offends basic concepts of the criminal justice system." *Leon*, 468 U.S. at 908.[1]

I.

Following a presentation to Tydel John's sixth-grade class on the difference between appropriate and inappropriate touching, several students reported that John had engaged in inappropriate contact with them. After interviewing some of the students, police officer Naomi Joseph submitted an affidavit and request for a warrant to search John's home. The affidavit stated that "persons who commit sexual offenses involving children customarily hide evidence of such offenses, including notes, photographs, computer files, in their homes and on their computer." (J.A. 108, 182). Based on this belief, Joseph concluded that she would find notebooks, pornographic photos of children and computer files containing pornographic notes or photographs of children. A Superior Court Judge determined there was probable cause to believe evidence of sexual contact would be

---

[1] I agree with my colleagues that we have jurisdiction over this interlocutory appeal pursuant to 48 U.S.C. § 1613.

1

found in John's home. Ultimately, police searched John's home and, while looking for evidence of child pornography, they found notebooks containing chronicles of John's exploitation of young girls.

On John's motion, a Virgin Islands superior court judge, relying on the Sixth Circuit's decision in *United States v. Hodson,* 543 F.3d 286 (6th Cir. 2008), held that because a warrant establishing probable cause for child molestation does not necessarily provide probable cause to search for child pornography, John's notebooks must be suppressed. I believe that the Majority decision affirming that suppression to be wrong under the good faith exception to the exclusionary rule and contrary to the Supreme Court's most recent pronouncement of that rule in *Davis v. United States,* 564 U.S. ---slip op. at 8-9 (2011). In short, "[b]ecause suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety," I respectfully dissent. *Id.* at 1.

## II.

My disagreement with the Majority is not that a correlation between child abuse and child pornography was not properly established. Indeed, there may be a nexus. As then Circuit Judge Sotomayor, observed, "[p]erhaps it is true that all or most people who are attracted to minors collect child pornography." *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008)(Sotomayor, J.). And perhaps it is not.[2] In

---

[2] The literature is mixed. Most of the studies are concerned with whether possession of child pornography causes the possessor to actually commit a sexual offense against a child. The reverse relationship—whether child molesters are more likely to possess child pornography—has been of less interest to scholars. It is clear that the "empirical literature is unable to validate the assumption that there is a causal connection between possession of child pornography and child sex abuse." Carissa Byrne Hessick, *Disentangling Child Pornography from Child Sex Abuse*, 88 Wash. U. L. Rev. 853, 875(2011). But it is equally clear that the empirical data shows a high correlation between general pornography consumption and child molestation. *See* Neil Malamuth &

this case, I agree that the judge who issued the warrant should have insisted on a more direct connection between child abuse and child pornography. But, in my view, the failure to allege the connection between the two does not support the Majority's view that Officer Joseph was "grossly negligent" and that failure does not justify the extreme sanction of exclusion.

The Supreme Court has articulated two principles that limit the application of the exclusionary rule. The rule applies "only where it result[s] in appreciable deterrence" and, even when it does, "the benefits of deterrence must outweigh the costs." *Herring*, 555 U.S. at 141 (citing *Leon*, 468 U.S. at 909, 910) (internal quotation marks omitted); *see also Davis*, 564 U.S. ---, slip op. at 6. There is likely to be no appreciable deterrence "when an officer acting with objective good faith has obtained a search warrant and acted within its scope" because "[i]n most such cases, there is no police illegality and thus nothing to deter." *Leon,* 468 U.S. at 920-21. On the other hand, when an officer exhibits "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis*, 564 U.S. ---, slip op. at 8 (internal quotation marks and citation omitted).

The Majority believes that its decision will have a deterrent effect because Joseph's behavior was, "at a minimum, grossly negligent." (Maj. Op. at 16.) This is a factual determination that is not supported by the record. *Cf. Franks v. Delaware*, 438 U.S. 154, 155 (1978) (concluding that a defendant must prove by a preponderance of the evidence at a factual hearing that an affiant knowingly, intentionally, or with reckless disregard for the truth, included a false statement in an affidavit). Moreover, we are not in a position to make such a finding, depending as it does on assessments of credibility and demeanor that are not readily apparent in a transcript. Absent such a finding, "the deterrence rationale loses much of its force and exclusion

Mark Huppin, *Drawing the Line on Virtual Child Pornography: Bringing the Law in Line with the Research Evidence*, 31 N.Y.U. Rev. L. & Soc. Change 773, 794 (2007) ("Overall, these data do indicate that child molesters have had more pornography exposure than other groups.").

cannot pay its way." *Davis*, 564 U.S. ---, slip op. at 8 (internal quotation marks and citation omitted).

The Majority further concludes that the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and hence culpable enough to be deterred by applying the exclusionary rule. (Maj. Op. at 11 (quoting *United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010)). However, applicable precedent requires us to determine the culpability of a police officer's conduct in an objective fashion, asking whether "a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n.23).

In this light, the question is what a reasonably well trained officer would have known when applying for a warrant in December 2007. Such an officer would have known that probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), but little else. In December 2007, there were no precedents applying this broad standard to analogous facts. Under such circumstances, a reasonable police officer would do exactly what Joseph did: she would submit a request to a judge asking whether there is probable cause for a warrant. And, lacking legal training herself, she would then rely on that judicial determination to do her job. One might argue that suppressing evidence obtained when a warrant is invalid would encourage police officers to scrutinize the warrant closely and point out legal errors. But police officers are not lawyers and this argument was expressly rejected in *Leon* as "speculative." 468 U.S. at 918.

The reasonably well-trained officer would fare no better today. While that officer would have the benefit of several court of appeals opinions discussing the issue of whether probable cause to believe that someone has molested a child automatically provides probable cause to believe that someone will possess photographic evidence of that crime (or photos used to facilitate the crime—tools of a despicable trade), those opinions provide conflicting guidance. *Compare Hodson*, 543 F.3d at 292, 293 (concluding that there is no

4

probable cause in such circumstances and applying the exclusionary rule), *with Falso*, 544 F.3d at 122, 125 (concluding that there was no probable cause, but refusing to apply the exclusionary rule), *and with United States v. Colbert*, 605 F.3d 573, 576, 578-79 (8th Cir. 2010) (concluding that the relationship between child molestation and child pornography is "intuitive," thus providing probable cause, and then holding in the alternative that the exclusionary rule would not apply).

The split in the courts of appeals that have addressed this issue shows that even judges, steeped in the law and acting in the utmost good faith, can have different opinions on the issue. If even the experts cannot agree on whether probable cause to search for evidence of child molestation provides probable cause to search for child pornography, it was not objectively unreasonable—let alone, *entirely unreasonable*—for Joseph to take one side of the controversy over the other, even if we now disagree with that decision. *Cf. Leon*, 468 U.S. at 926 (noting divided opinion among judges as to the existence of probable cause in that case and then observing that under such circumstances "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate"); *see also Falso*, 544 F.3d at 128 (stating that this is an issue "upon which reasonable minds can differ" before concluding that police officers acted in good faith).

Even the Second Circuit, which quite correctly found the supposed connection between child molestation and child pornography to be nothing more than an "inferential fallacy of ancient standing," could not come to the conclusion that a police officer acting on a warrant based on such an assumption was entirely unreasonable. *See Falso*, 544 F.3d at 128 ("Once the district court rules on the legal sufficiency of the facts alleged in the affidavit, the officers were justified in executing the warrant."). It is not difficult to see why. Probable cause determinations are not, and never have been, based on rigid logic. As the Supreme Court explained almost thirty years ago, evidence must be "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. . . . [P]robable cause is a fluid concept—turning on the assessment of

probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. It was not unreasonable for Joseph to assess the probability that John would have child pornography and conclude that there was probable cause.

A comparison with the Supreme Court's recent decision in *Davis* makes this clear. In *Davis*, the Supreme Court declined to apply the exclusionary rule where the police followed a court of appeals precedent authorizing their search of an automobile because "[a]bout all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn 'what is required of them' under Fourth Amendment precedent and will conform their conduct to these rules." 564 U.S. ---, slip op. at 11 (quoting *Hudson v. Michigan*, 547 U.S. 586, 599 (2006)). This case is the other side of the *Davis* coin. Here, there was no legal precedent to guide a responsible law enforcement official's judgment as to whether there was probable cause for a particular search. As I've said, a responsible law enforcement official in this position does exactly what Joseph did and seeks a legal determination of probable cause from a judge. The police officer then relies on this judicial determination authorizing her conduct as a tool to "fulfill [her] crime-detection and public-safety responsibilities." *Id.* Applying the exclusionary rule in such circumstances would serve only to "discourage the officer from doing [her] duty," which is "not the kind of deterrence the exclusionary rule seeks to foster." *Id.* (internal quotation marks and citation omitted).

Joseph's mistake was not the error of culpably omitting a crucial fact linking child molestation with child pornography. Her mistake was in thinking that the facts she did provide—that "persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, *photographs*, [and] computer files, in the homes and on their computer[s]"—were sufficient to establish probable cause to search for child pornography. In other words, she believed there was a fair probability that a man accused of molesting children and recording his crimes in one medium—a written journal—might also record them in another—photographs. Although we might now wish that she had provided more specific justifications for this belief,

6

Joseph's conduct was not entirely unreasonable. She made a mistake. But that mistake will not be undone by today's opinion.

Without a finding of deterrence, application of the exclusionary rule carries substantial costs:

> Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment.

*Davis*, 546 U.S. ---, slip op at 7 (citations omitted). For all of these reasons, I respectfully dissent.