**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3126
_____

UNITED STATES OF AMERICA

v.

SAM ZEMA,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cr-00228-001)
U.S. District Judge:  Honorable Marilyn J. Horan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 2, 2024
_____

Before: SHWARTZ, MATEY, and McKEE, <u>Circuit Judges</u>

(Filed:  December 31, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**SHWARTZ**, <u>Circuit Judge</u>.

Sam Zema appeals the District Court's order denying his motion to suppress evidence seized from his residence pursuant to a search warrant. Because the good faith exception applies, we will affirm.

I

A[1]

In 2019, Zema called a crisis center and relayed that he had (1) "inappropriate sexual relationships with underage males," App. 73; and (2) "a recent [life] event . . . that triggered his feelings for underage [males], which prompted him" to temporarily pursue a twelve-year-old boy he saw walking on the street. App. 73. When the crisis center operator asked Zema whether he planned "to act on his urges," he replied, "I hope not" and stated that "the last time he acted on his urges was in" the 1980s. App. 73. The crisis center contacted the police, who then called Zema.

Zema told law enforcement officers that he (1) was having problems with his significant other, (2) had relationships with underage males in the past, including with someone in the 1980s whom he recently tried to locate, and (3) had recently followed a boy he found attractive, which prompted him to call the crisis center.

The officers, concerned about Zema's "recent urges and behaviors as well as his past relationships," inquired about his "computer use as it relates to underage [males]." App. 74. When asked whether he had a computer at his residence, Zema replied, "don't

---

[1] The facts set forth herein are primarily drawn from the probable cause affidavit submitted in support of the warrant application.

2

most people[?]" App. 74. When asked whether he searched for underage males online, Zema said "that he [did] not want to go into that" and declined to provide his email address.[2] App. 74. In response to questioning about his other residences, Zema listed the states where he previously lived, and then asked if they "were going to look for open cases in said areas" and "then concluded the interview." App. 74.

The next day, law enforcement applied for a warrant to search Zema's residence and any computers therein, stating there was probable cause to believe they would find evidence of child exploitation and materials depicting minors engaged in sexually explicit conduct in violation of federal law.[3] The supporting affidavit set forth Zema's statements to the crisis center and law enforcement, as well as conclusions drawn from the affiant's prior experience as an officer involved in child pornography investigations. Based on that training and experience, he learned that (1) "individuals who view and receive multiple visual depictions of minors engaged in sexually explicit conduct are often individuals who have a sexual interest in children and in images of children," App. 74, (2) "[i]ndividuals who have a sexual interest in children or images of children typically

_____

[2] Zema never invoked the right against self-incrimination, see Salinas v. Texas, 570 U.S. 178, 181 (2013) (plurality) (holding that "the privilege generally is not self-executing and that a witness who desires its protection must claim it" (internal quotation marks and citation omitted)).

[3] See 18 U.S.C. §§ 2422(a)-(b) (prohibiting "persuad[ing], induc[ing], entic[ing], or coerc[ing]" a minor to travel to engage in any sexual activity or "us[ing . . . any facility" of interstate commerce to "persuade[], induce[], entice[], or coerce[]" any minor to engage in any sexual activity); 2252(a)(2) (prohibiting "receiv[ing], or distribut[ing]," material depicting "a minor engaging in sexually explicit conduct"); 2252(a)(4)(B) (prohibiting possessing material depicting "a minor engaging in sexually explicit conduct").

retain pictures" electronically so they are available for view, App. 74, and (3) "those involved in child exploitation and/or child pornography offenses commonly communicate using cellular phones and computers" and evidence of these offenses can be found on computers and cell phones and "can include internet searches, addresses, telephone numbers and contacts, as well as incriminating communications via emails, instant messages, or text messages," App. 69. A federal magistrate judge granted the application and issued the search warrant. The search revealed two computers containing child pornography.

B

Zema was indicted on one count of possessing material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). He moved to suppress the evidence recovered from his residence. The District Court denied the motion, holding that a magistrate judge could "reasonably conclude" there was a fair probability that evidence of a crime would be found in Zema's residence and on his electronic devices based on (1) Zema's statements about his experience with and feelings toward underage males, (2) his refusal to answer questions about whether he searched the internet for underage males, which, though not an admission, could be considered as part of the totality of the circumstances, and (3) the proffered correlation between those who have a sexual interest in children and those who view child pornography. United States v. Zema, No. 20-cr-228, 2023 WL 2855058, at *5-7 (W.D. Pa. Apr. 10, 2023) (citation omitted). The Court also determined that, even absent probable cause, law enforcement

4

acted in good faith when relying upon the warrant and therefore suppression was inappropriate.  Id. at *7.

Zema appeals.[4]

## II[5]

The Fourth Amendment prohibits "unreasonable searches and seizures" and mandates that "no [w]arrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  Probable cause is analyzed under a "totality-of-the-circumstances approach," which requires a judge to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 230, 238 (1983).

Evidence obtained following the execution of a search warrant later found to lack probable cause will be excluded "only in those 'unusual cases' where it" may "deter unreasonable searches and seizures by law enforcement."  United States v. Caesar, 2 F.4th 160, 169 (3d Cir. 2021) (citing United States v. Leon, 468 U.S. 897, 908, 918 (1984)).  Under the good faith exception to this exclusionary rule, if law enforcement acted in good faith in securing and executing a warrant, the evidence gathered pursuant to it will not be suppressed even if it is later determined that the probable cause

---

[4] After the District Court denied his motion to suppress, Zema entered a conditional guilty plea, reserving his right to appeal the suppression ruling. **App. 133-39.**

[5] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.  Our review of the District Court's ruling on the good faith exception is plenary.  United States v. Williams, 3 F.3d 69, 71 n.2 (3d Cir. 1993).

determination was erroneous.[6]  Id. (citing Leon, 468 U.S. at 922).  Thus, a "warrant

issued by a magistrate [judge] normally suffices to establish that a law enforcement

officer has acted in good faith in conducting the search," United States v. Zimmerman,

277 F.3d 426, 436 (3d Cir. 2002) (internal quotation marks and citation omitted), and

typically "will obviate the need for any deep inquiry into [the] reasonableness of the

officer's reliance on the warrant," Caesar, 2 F.4th at 170 (alteration in original) (internal

quotation marks and citation omitted).

    There are four situations where "a warrant may be so flawed that 'the officer [had]

no reasonable grounds for believing that [it] was properly issued.'"  Id. (second alteration

in original) (quoting Leon, 468 U.S. at 923 (footnote omitted)).  Zema asserts that one of

these situations applies—namely, that "the warrant was based on an affidavit so lacking

in indicia of probable cause as to render official belief in its existence entirely

unreasonable[.]"  Zimmerman, 277 F.3d at 437.  The "threshold for establishing this

exception is a high one," Messerschmidt v. Millender, 565 U.S. 535, 547 (2012), and

Zema fails to meet his burden here.

    The affidavit here rested primarily on Zema's statements to the crisis center and

law enforcement, including that he (1) had sex with underage males; (2) had a recent life

event that triggered his interest in underage males that he was  "hop[ing] not" to act on;

(3) a few weeks before the search, saw, was attracted to, and followed an underage male

for a few minutes; and (4) asked the officers if they were going to look into "open cases"

---

[6] The "probable cause inquiry remains highly relevant to our good faith analysis."
Caesar, 2 F.4th at 171 (internal quotation marks and citation omitted).

in states where he previously resided.  App. 73-74.  Thus, the affidavit was not "bare bones," nor did it "rely on [law enforcement's] unsupported belief that probable cause exist[ed]."  United States v. Pavulak, 700 F.3d 651, 664 (3d Cir. 2012) (citations omitted).

In addition to his recent behavior and sexual feelings for underage males, the affidavit recited statements Zema made, which provided a basis to infer that he may have searched online for child sexual abuse materials and that evidence of such conduct could be found on his computer at his residence.  See United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010) (explaining that "probable cause can be . . . inferred from . . . normal inferences about where a criminal might hide [evidence]" (alteration in original) (citation omitted)).  Specifically, Zema conveyed that he recently searched online for his 1980s victim and implied that he had a computer at his residence, raising the inference that he might have illicit material on that computer.  He also told law enforcement that "he [did] not want to go into" whether he searched online for underage males and declined to provide them with his email address.  App. 74; see United States v. Burton, 288 F.3d 91, 104-05 (3d Cir. 2002) (holding affidavit provided a fair probability that contraband would be found where suspect's "equivocation under questioning on a subject [he was] presumed to know readily suggest[ed] he [was] attempting to deceive" detectives).[7]  The totality of the circumstances, not simply his nonresponsiveness, reasonably could be

---

[7] See also United States v. Whitner, 219 F.3d 289, 299 (3d Cir. 2000) ("[A suspect's] suspicious and deceptive response to questioning leads to a reasonable inference that [they were] attempting to conceal [evidence of a crime].").

viewed as suggesting that Zema had incriminating material on his computer.

Moreover, the affiant, based on his training and experience in child pornography investigations, described a correlation between those with a sexual interest in minors and those who possess visual depictions of minors engaged in sexually explicit conduct.[8] Caesar, 2 F.4th at 177-78 (concluding affiant acted in good faith in executing search warrant for child pornography where he "explicitly relied on his experience and training to conclude that child sexual abusers tend to possess child pornography"). "[I]n assessing whether [law enforcement] acted in good faith, we cannot ignore the volume of social science research and legal authority discussing the tendency of child sexual abusers to possess child pornography" and accordingly "credit the weight of these authorities in concluding it was not entirely unreasonable for [law enforcement] to believe the initial affidavit set forth probable cause to search for the images."[9] Id. at 176-77.

For all these reasons, even if the existence of probable cause to search for

---

[8] The affidavit here is distinguishable from those in Zimmerman, 277 F.3d 426, and Virgin Islands v. John, 654 F.3d 412 (3d Cir. 2011). The warrant applications in Zimmerman and John, unlike here, rested on statements by accusers, not on statements the suspect made shortly before the warrant's issuance, and contained no averments supporting a link between the suspect's recent conduct and his possession of child pornography. See Zimmerman, 277 F.3d at 430-31; John, 654 F.3d at 414, 419. Furthermore, John "involved a warrant application that lacked any express statement about the link between molestation and pornography," Caesar, 2 F.4th at 172 (citation omitted), and the Government in Zimmerman conceded there was no probable cause to search for child pornography, 277 F.3d at 432. Neither of those are true here.

[9] Our concurring colleague questions our reliance on Burton and Whitner because they are drug cases and, in such cases, we have permitted an inference that drug dealers are likely to store drugs in their home. While we have not issued an opinion about what inferences can be drawn from the expressions of "inappropriate sexual feelings toward children," Concurring Op. at 2 n.5, we have approved reliance on evidence that allowed

8

evidence of child exploitation and child pornography was a close call here, it was not

"entirely unreasonable" for law enforcement to conclude the warrant was valid.

Zimmerman, 277 F.3d at 437.  Therefore, the District Court did not err when it denied

Zema's motion to suppress.

III

For the foregoing reasons, we will affirm.

---

for an inference that child sexual abusers tend to possess child pornography.  Caesar, 2 F.4th at 176-77.  In this case, the probable cause affidavit recounted Zema's admissions of his prior child sexual abuse, and therefore, our reliance on Burton and Whitner is not misplaced.

McKee, J. concurring, dubitante.

I reluctantly agree with my colleagues that the good faith exception applies, and we are bound by *United States v. Leon*.[1]  I agree that the affiant acted in good faith in applying for and executing the search warrant for child pornography based on his experience and investigative training that "individuals who view and receive multiple visual depictions of minors engaged in sexually explicit conduct are often individuals who have a sexual interest in children and in images of children."[2]

I do so, however, with reservation, which compels me to explain that my concurrence is dubitante.  Although I believe that *Leon* controls, I think that the doctrine's application is a much closer call than my colleagues' opinion suggests.

The Majority argues in part that Zema's recent conduct of searching online for a minor he was involved with in the 1980s implies illicit material will be found on his computer forty years later.  However, the subject of Zema's search would have been at least sixty years old when this search warrant was applied for.  Moreover, Zema obviously called the crisis center seeking the help he recognized he needed.  Rather than trying to provide the help he was asking for, personnel at the crisis center called in the police who responded by obtaining a search warrant and initiating a criminal prosecution.

The only thing suggesting that Zema may have currently possessed child pornography on a computer was his refusal to answer an officer's question about whether

---

[1] 468 U.S. 897 (1984).
[2] App. 74.

1

he searched online for underage males and his refusal to provide an email address.[3]

Exercising one's constitutional right to refuse to answer such inquires and remain silent should not be relevant to a determination of probable cause to issue a search warrant.[4] The two cases my colleagues cite in support of a contrary finding are distinguishable.[5] Nevertheless, I agree with my colleagues that our prior pronouncements in *United States v. Caesar*, require that we affirm the denial of Zema's suppression motion.[6]

Nevertheless, I remain doubtful that the reliance on Zema's admitted sexual interest in children is enough to support probable cause to believe that child pornography would be found on a computer in Zema's home under the circumstances here. As we said in *United States v. Zimmerman*, "[r]ambling boilerplate recitations [regarding a molestation-pornography link] . . . may have added fat to the affidavit, but certainly no muscle" for establishing probable cause.[7] Zema called a crisis hotline to receive help for

---

[3] It is hard to understand why his rather flippant response to whether he owned a computer ("don't most people?") is even relevant to the existence of probable cause to invade his home in search of a presumed computer and its assumed content. *Id.*

[4] *See, e.g.*, *Florida v. Royer*, 460 U.S. 491, 498 (1983) (stating, in the context of a Fourth Amendment seizure, a person "may not be detained even momentarily without reasonable, objective grounds for doing so; and *his refusal to listen or answer does not, without more, furnish those grounds*") (emphasis added); *Brown v. Texas*, 443 U.S. 47 (1979).

[5] The two cases the Majority cite for the proposition that Zema's refusal to answer whether he searched online for underage males is incriminating are distinguishable. *United States v. Whitner,* 219 F.3d 289 (3d Cir. 2000) and *United States v. Burton*, 288 F.3d 91 (3d Cir. 2002) are drug trafficking cases where the defendants equivocated in response to officers questioning them about the address of their home. Although there is an inference in the Third Circuit that drug dealers are likely to store drugs in their homes, there is not the same inference that people who have inappropriate sexual feelings toward children are likely to possess child pornography in their home.

[6] 2 F.4th 160 (3d Cir. 2021); *see* Maj. Op. 6 and 8.

[7] 277 F.3d 426, 433 n.4 (3d Cir. 2002) (citation omitted).

his inappropriate sexual feelings toward a minor he saw on the street. That is exactly the type of response that should be encouraged.

I do not doubt the good faith or sincerity of the crisis center personnel who responded by calling police. They may well have thought they needed to err on the side of protecting children from criminal conduct and therefore believed they had to inform police of Zema's call. Nevertheless, I can't help but wonder if others who may otherwise want to seek help from such a crisis center will be deterred from doing so once they read about how the center responded to Zema's plea for help. Accordingly, application of *Leon* may well be counterproductive here.

Of course, that concern is of questionable relevance to our legal analysis. Given the totality of circumstances here, I agree with my colleagues that the denial of this motion to suppress is consistent with the Supreme Court's pronouncements in *Leon* and its progeny. I therefore join the Majority Opinion with the reservations I have expressed.